271 F.3d 1141 (9th Cir. 2001)
 CALIFORNIA TEACHERS ASSOCIATION; NORMA STEINER; IRELLA PEREZ; KRISTIN WORTHMAN; ASSOCIATION OF MEXICAN AMERICAN EDUCATORS; CALIFORNIA ASSOCIATION FOR ASIAN-PACIFIC BILINGUAL EDUCATION; NATIONAL ASSOCIATION OF BILINGUAL EDUCATORS; EMILY PALACIO; ASSOCIATION OF CALIFORNIA SCHOOL ADMINISTRATORS, PLAINTIFFS-APPELLANTS,
v.
STATE BOARD OF EDUCATION, AND ITS MEMBERS; YVONNE W. LARSON; ROBERT L. TRIGG; TIMOTHY C. DRAPER; KATHRYN DRONENBERG; MARION JOSEPH; MEGAN KEPHART; MARION MCDOWELL; JANET NICHOLAS; GERTI B. THOMAS; MARINA TSE; DELAINE EASTIN, IN HER OFFICIAL CAPACITY AS THE STATE SUPERINTENDENT OF PUBLIC INSTRUCTION; DEFENDANTS-APPELLEES,
RON UNZ; SARINA FRIAS; SYLVIA NMI MARTINEZ; ANGELINA MORFIN; CENTER FOR EQUAL OPPORTUNITY, DEFENDANTS-INTERVENORS-APPELLEES
 No. 99-56784
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted October 10, 2000
Filed August 29, 2001
Amended November 21, 2001
 
 [Copyrighted Material Omitted][Copyrighted Material Omitted]
 Jeremiah A. Collins, Bredhoff & Kaiser, Washington, D.C., for the plaintiffs-appellants.
 Donald P. Cole, Deputy Attorney General, San Francisco, California, for the defendants-appellees.
 Eric Grant, Pacific Legal Foundation, Sacramento, California, for defendants-intervenors-appellees.
 Appeal from the United States District Court for the Central District of California; Edward Rafeedie, District Judge, Presiding. D.C. No. CV 98-09694-ER
 Before: Boochever, Tashima, and Tallman, Circuit Judges.
 
 
 1
 Opinion by Judge Boochever; Dissent by Judge Tashima
 
 ORDER
 
 2
 The opinion in the above-entitled case, filed August 29, 2001, and published at 263 F.3d 888 (9th Cir.2001), is amended by adding a footnote 4 after the first sentence of the second full paragraph on page 893 of the opinion. Footnote 4 should read as follows:
 
 
 3
 We are aware that California allows federal courts to certify questions of state law to the California Supreme Court. See Cal. R. Ct. 29.5. Mindful of the Supreme Court's admonition in Arizonans for Official English v. Arizona, 520 U.S. 43, 75-78 (1997), we issued an order in advance of oral argument asking the parties to be prepared to address the following questions: "(1) whether any potentially determinative issue in this case should be certified to the California Supreme Court...; and (2) if so, the precise formulation of said question(s)." At argument, all parties, including the California Attorney General representing the State Board of Education, agreed that this case presented no questions of state law that should be certified, and, in fact, urged this panel to decided the case without certifying any questions of law to the California Supreme Court.
 
 
 4
 The numbers of all subsequent footnotes are changed accordingly.
 
 OPINION
 Boochever, Circuit Judge:
 
 5
 Proposition 227, a California ballot initiative entitled "English Language in Public Schools," codified at California Education Code &#167 &#167 300-340, restricts the use of languages other than English by educators in public schools. The enforcement provision, section 320, allows aggrieved parents to sue and hold personally liable any teacher, administrator or official "who willfully and repeatedly refuses to implement the terms of this statute." Cal. Educ. Code &#167 320. California Teachers Association, et al. ("Plaintiffs") argue that the terms of the initiative, and specifically the terms of section 320, violate the First Amendment and the Fourteenth Amendment by failing to define clearly when and how much use of non-English will expose educators to personal liability. Plaintiffs request this Court to declare that section 320 is unconstitutionally vague on its face, and to enjoin its enforcement. For the reasons stated below, we hold that section 320, the parental enforcement provision of Proposition 227, is sufficiently clear to withstand Plaintiffs' facial vagueness challenge.
 
 BACKGROUND
 
 6
 On June 2, 1998, California voters approved Proposition 227. The initiative mandates that "all children in California public schools shall be taught English by being taught in English." Cal. Educ. Code &#167 305. Unless a parent seeks a waiver pursuant to sections 310 and 311, Proposition 227 requires that "all children be placed in English language classrooms." Id. &#167 305. "English language classrooms" are classrooms "in which the language of instruction used by the teaching personnel is overwhelmingly the English langauge[.]" Id. &#167 306(b). Students who are "English learners shall be educated through sheltered English immersion during a temporary transition period[.]" Id. &#167 305. "Sheltered English immersion" is defined as "an English language acquisition process for young children in which nearly all classroom instruction is in English but with the curriculum and presentation designed for children who are learning the language." Id. &#167 306(d).
 
 
 7
 Section 320 is the parental enforcement provision. It states that "all California school children have the right to be provided with an English language public education. " Id. &#167 320. If a student is denied "the option of an English language instructional curriculum in public school," the child's parent or legal guardian has legal standing to sue for enforcement of the statute's provisions as well as attorneys' fees and actual damages. Id. Any educator (i.e., school board member, elected official, teacher, or administrator) "who willfully and repeatedly refuses to implement the terms of this statute by providing such an English language educational option" may be held personally liable. Id.[1]
 
 
 8
 Plaintiffs brought suit under 42 U.S.C. &#167 1983 against the State Board of Education, et al. ("Defendants") asserting that the parental enforcement provision of Proposition 227 is unconstitutionally vague and overbroad in violation of the First and Fourteenth Amendments to the United States Constitution.[2] Plaintiffs also asserted that Proposition 227 violates other due process rights conferred by the Fourteenth Amendment. The district court granted summary judgment in favor of Defendants on all claims. Plaintiffs appeal the vagueness issue only.
 
 ANALYSIS
 I. Vagueness Challenge
 
 9
 Plaintiffs contend that Proposition 227 is unconstitutionally vague in two principal respects.[3] First, they contend it fails to define clearly when teachers are required to speak in English. Plaintiffs argue that section 320's mandate that educators provide an "English language educational option" is unfathomable, leaving them guessing under which circumstances the language restrictions of Proposition 227 apply.
 
 
 10
 Second, Plaintiffs argue that Proposition 227 fails to define clearly how much non-English will subject them to personal liability under section 320. For public school students in general, Proposition 227 requires that the language of instruction be "overwhelmingly" the English language. Id. &#167 306(b). For English learners, Proposition 227 requires that"nearly all" classroom instruction be in English. Id. &#167 306(d). Plaintiffs argue that the terms "nearly all" and "overwhelmingly" are inherently imprecise words, failing to provide adequate notice of what amount of non-English is permitted under the statute.
 
 A. Scope of Proposition 227
 
 11
 As an initial matter, we must address the scope of Proposition 227, that is, the circumstances under which the language restrictions apply. This determination affects our consideration of whether the initiative implicates First Amendment interests, whether Plaintiffs may challenge the initiative on its face, and which level of vagueness scrutiny guides the analysis. These issues are discussed in subsequent sections.
 
 
 12
 Plaintiffs argue that Proposition 227 is potentially boundless because it imposes liability based on an educator's failure to provide an "English language educational option." Plaintiffs contend that this phrase is so incomprehensible that they can only guess when they must speak in English. Defendants respond that Proposition 227 applies only on the language of "instruction," i.e., the language teachers use to present the "curriculum" to students in California public schools. We agree.
 
 
 13
 We recognize that it is solely within the province of the state courts to authoritatively construe state legislation.[4] See United States v. Thirty-Seven (37) Photographs, 402 U.S. 363, 369 (1971). Nor are we authorized to rewrite the law so it will pass constitutional muster. Virginia v. American Booksellers Ass'n, Inc., 484 U.S. 383, 397 (1988). A federal court's duty, when faced with a constitutional challenge such as this one, is to employ traditional tools of statutory construction to determine the statute's "allowable meaning." Grayned v. City of Rockford, 408 U.S. 104, 110 (1972); Stoianoff v. Montana, 695 F.2d 1214, 1218 (9th Cir. 1983). In doing so, we look to the words of the statute itself as well as state court interpretations of the same or similar statutes. Grayned, 408 U.S. at 109-10. Moreover, before invalidating a state statute on its face, a federal court must determine whether the statute is "readily susceptible" to a narrowing construction by the state courts. American Booksellers, 484 U.S. at 397; Nunez v. City of San Diego, 114 F.3d 935, 942 (9th Cir. 1997).
 
 
 14
 With these principles in mind, we turn to the language of the initiative. Section 320 allows aggrieved parents to sue an educator "who willfully and repeatedly refuses to implement the terms of this statute by providing such an English language educational option at an available public school to a California school child[.]" An "English language educational option" refers to "the option of an English language instructional curriculum in public school," a phrase contained in the immediately preceding sentence. The phrase "English language instructional curriculum" is not specifically defined in section 320 or elsewhere in the initiative. However, section 320 indicates that the requirements of an "English language instructional curriculum" are "detailed in Article 2 (commencing with Section 305) and Article 3 (commencing with Section 310)."
 
 
 15
 Both terms, "instruction" and"curriculum," are used in Article 2. For example, section 305 requires the placement of English learners in "sheltered English immersion " which is defined as "an English language acquisition process for young children in which nearly all classroom instruction is in English but with the curriculum and presentation designed for children who are learning the language." Id. &#167 306(d) (emphasis added). Similarly, section 305 requires the placement of all students in "English language classrooms" which is defined as classrooms where "the language of instruction used by the teaching personnel is overwhelmingly the English langauge[.]" Id. &#167 306(b) (emphasis added). It seems plain that section 320's requirement that educators provide an"English language instructional curriculum" is simply a shorthand reference to the core requirements of Proposition 227 embodied in sections 305 and 306, namely, that educators must use English as the language of "instruction."
 
 
 16
 This conclusion is confirmed by the initiative's overarching mandate which declares that "all children in California public schools shall be taught English by being taught in English." Id. &#167 305 (emphasis added). It is also supported by McLaughlin v. State Bd. of Educ., 89 Cal. Rptr. 2d 295 (Cal. Ct. App. 1999). In McLaughlin, the California Court of Appeal analyzed Proposition 227 in the context of a challenge to the waiver provisions of the initiative. The court stated:
 
 
 17
 We conclude that the plain meaning of Proposition 227 was to guarantee that LEP [limited English proficient] students would receive educational instruction in the English language, and that English immersion programs would be provided to facilitate their transition into English-only classes. Proposition 227 also vests parents of LEP students with the sole right to seek a waiver from the Chapter's provision requiring English-only instruction for their own children. The Chapter's language permits no other means by which the program requirements may be waived, and in fact, allows for civil action against school districts, educators, and administrators who fail or refuse to provide English-only instruction (&#167 320).
 
 
 18
 Id. at 298 (emphasis added). The court also summarized section 320 as affording "parents a right to sue if their child or children are not provided English-only instruction." Id. at 301 (emphasis added).
 
 
 19
 In light of the plain language and purpose of Proposition 227, and the California Court of Appeal's reading of the same, we must reject Plaintiffs' contention that the scope of the initiative is potentially limitless. We conclude that, under the traditional tools of statutory construction, the language restrictions of Proposition 227 apply only to the language of instruction, i.e., the language teachers use to present the curriculum to students in California public schools. At the very least, the initiative is "readily susceptible " to this construction. See American Booksellers, 484 U.S. at 397. Whether the scope of Proposition 227 construed as such is sufficiently specific and clear to withstand Plaintiffs' facial vagueness challenge is a different question, which we address below.
 
 B. First Amendment Protection
 
 20
 Defendants argue that the speech by which teachers present the curriculum to students (hereinafter referred to as "instructional speech") is excluded from the protection of the First Amendment.[5] Plaintiffs contend that the First Amendment provides at least some protection for instructional speech, even if this protection is not of the highest order. Neither this court nor the Supreme Court has definitively resolved whether and to what extent a teacher's instructional speech is protected by the First Amendment. See Cohen v. San Bernardino Valley Coll., 92 F.3d 968, 971 (9th Cir. 1996); see also Karen C. Daly, Balancing Act: Teachers' Classroom Speech and the First Amendment, 30 J. L. & Educ. 1, 6 (Jan. 2001) ("The Supreme Court has yet to squarely address what level of protection, if any, should be accorded to teachers' in-class speech.").
 
 
 21
 We need not resolve this controversy, however, to decide the merits of this appeal. Instead, we may assume arguendo that the instructional speech covered by Proposition 227 receives some First Amendment protection. Specifically, we will assume that regulations of such speech are subject to the test articulated in Hazelwood Sch. Dist. v. Kuhlmeier, 484 U.S. 260 (1988). To survive First Amendment review under the Hazelwood test, regulations must be "reasonably related to legitimate pedagogical concerns." Id. at 273. Although the Hazelwood test is not a difficult one to satisfy, it appears to be more speech-protective than the two alternatives.[6] We assume this more protective test applies because, as explained below, even with the benefit of this assumption, Plaintiffs cannot demonstrate that the statute is unconstitutionally vague on its face.
 
 
 22
 Two conclusions flow from our assumption that instructional speech receives First Amendment protection under the Hazelwood standard. First, Plaintiffs may properly challenge section 320 of Proposition 227 on its face, as opposed to simply as applied. In the First Amendment context, facial vagueness challenges are appropriate if the statute clearly implicates free speech rights. Foti v. City of Menlo Park , 146 F.3d 629, 639 n.10 (9th Cir. 1998); United States v. Wunsch, 84 F.3d 1110, 1119 (9th Cir. 1996); see also Roulette v. City of Seattle, 97 F.3d 300, 305 (9th Cir. 1996) (facial attack proper if the challenged statute "is directed narrowly and specifically at expression or conduct commonly associated with expression") (quotation marks omitted). Because we assume that Proposition 227 is subject to First Amendment review under the Hazelwood test, we may conclude that Proposition 227 clearly implicates free speech rights and, therefore, Plaintiffs may challenge the initiative on its face.[7]
 
 
 23
 Second, if a teacher's instructional speech enjoys First Amendment protection under the Hazelwood standard, then a more stringent vagueness test governs our review. When First Amendment freedoms are at stake, courts apply the vagueness analysis more strictly, requiring statutes to provide a greater degree of specificity and clarity than would be necessary under ordinary due process principles. Hoffman Estates v. Flip-side, Hoffman Estates, Inc., 455 U.S. 489, 499 (1982); Foti, 146 F.3d at 638-39. The reason for this rule is that "First Amendment freedoms need breathing space to survive." N.A.A.C.P. v. Button, 371 U.S. 415, 432-33 (1963). "Uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked." Grayned, 408 U.S. at 109 (quotation marks, ellipses omitted).
 
 
 24
 Defendants argue that, even if the Hazelwood test applies, Proposition 227 is not subject to heightened vagueness scrutiny because the instructional speech it regulates and chills is not "protected" by the First Amendment. Such speech is not "protected," according to Defendants, because it could be banned completely under a broader, more precise law without violating the First Amendment's Hazelwood test. We disagree. Whether Defendants' hypothetical, complete ban would pass the Hazelwood test does not determine whether Proposition 227 is subject to heightened vagueness scrutiny. It is determinative that the initiative must answer to the Hazelwood test in the first place. To trigger heightened vagueness scrutiny, it is sufficient that the challenged statute regulates and potentially chills speech which, in the absence of any regulation, receives some First Amendment protection. See Cohen, 92 F.3d at 972 (applying heightened vagueness scrutiny to speech receiving some First Amendment protection while declining to determine whether broader, more precise rule could validly prohibit speech); see generally Lawrence H. Tribe, American Constitutional Law &#167 12-31, at 1033-35 (2d ed. 1988) (discussing relationship between doctrines of vagueness and overbreadth). Here, because we have assumed that instructional speech, in the absence of any regulation, receives some First Amendment protection (i.e., restrictions on such speech must pass the Hazelwood test), we may properly conclude that heightened vagueness scrutiny applies.
 
 C. Application of Vagueness Doctrine
 
 25
 Vague statutes are objectionable for three primary reasons. First, they trap the innocent by not providing fair warning. Second, they impermissibly delegate basic policy matters to lower level officials for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, when vague statutes involve sensitive areas of First Amendment freedoms, they operate to inhibit the exercise of those freedoms. Grayned, 408 U.S. at 108-09; Foti, 146 F.3d at 638. As explained in the previous section, these vagueness concerns are more acute when a law implicates First Amendment rights and, therefore, vagueness scrutiny is more stringent. See Hoffman Estates, 455 U.S. at 499.
 
 
 26
 Nevertheless, perfect clarity is not required even when a law regulates protected speech. Ward v. Rock Against Racism, 491 U.S. 781, 794 (1989). "Condemned to the use of words, we can never expect mathematical certainty from our langauge." Grayned, 408 U.S. at 110; see Kolender v. Lawson, 461 U.S. 352, 361 (1983) (even in the strictest sense, "due process does not require impossible standards of clarity") (quotation marks omitted). Therefore, even when a law implicates First Amendment rights, the constitution must tolerate a certain amount of vagueness.
 
 
 27
 A statute's vagueness exceeds constitutional limits if its "deterrent effect on legitimate expression is . .. both real and substantial, and if the statute is [not] readily subject to a narrowing construction by the state courts[.] " Young v. American Mini Theatres, Inc., 427 U.S. 50, 60 (1976) (quotation marks omitted); see also Tribe, &#167 12-31, at 1035 ("The expression deterred by a vague statute must be both real and substantial. And a precise and narrow judicial reconstruction must be unavailable."). Whether a statute's chilling effect on legitimate speech is substantial should be judged in relation to what the statute clearly proscribes. Cf. Broadrick v. Oklahoma, 413 U.S. 601, 615 (1973) (substantial overbreadth "judged in relation to the statute's plainly legitimate sweep"). Stated alternatively, uncertainty at a statute's margins will not warrant facial invalidation if it is clear what the statute proscribes "in the vast majority of its intended applications." Hill v. Colorado, 530 U.S. 703, 733 (2000) (quotation marks omitted).
 
 
 28
 Plaintiffs argue that they are uncertain when they are required to speak in English because Proposition 227 uses varied, undefined, and conflicting terms to delineate its scope. As indicated above, we have concluded that the restrictions of Proposition 227 apply to the language of instruction, i.e., the language teachers use to present the curriculum to students in California public schools. Nevertheless, Plaintiffs contend that this construction still fails to give Plaintiffs sufficient notice of when the language restrictions apply. Specifically, they argue that it is unclear whether teachers must speak English when disciplining students, supervising students on the playground, informing students about safety concerns, taking students on field trips, tutoring students individually, discussing informal matters with students in class, or discussing informal matters with students outside of class. One plaintiff teacher also expressed confusion whether Proposition 227 precluded her from recommending that parents exercise their option under the initiative to place their children in bilingual classes.
 
 
 29
 In the context of this facial challenge, we decline to identify all the specific instances in which a teacher may or may not be providing "instruction" or presenting the "curriculum." It is sufficient to note that "instruction" and "curriculum" are words of common understanding, see Grayned, 408 U.S. at 112, to which no teacher is a stranger. These terms unquestionably include activities such as teaching students mathematics, science, social studies, history, English, or any other subject matter taught in public schools.[8] We must presume that such activities comprise a large portion of the interaction educators have with their students. We agree with Defendants that activities such as supervising children on the playground, disciplining students for inappropriate behavior, informing students of safety concerns or informally conversing with students outside the classroom, do not fall within the allowable meaning of "instruction" and "curriculum." See id. at 110 (federal courts must construe allowable meaning of state statute). Also, there is no doubt that "instruction" and "curriculum" do not sweep within their reach a teacher's conversation with a student's parents concerning the option of bilingual education.
 
 
 30
 Undoubtedly, there will be situations at the margins where it is not clear whether a teacher is providing instruction and presenting the curriculum. In these situations, where legitimate uncertainty exists, teachers may feel compelled to speak in English and may forgo some amount of legitimate, non-English speech. The touchstone of a facial vagueness challenge in the First Amendment context, however, is not whether some amount of legitimate speech will be chilled; it is whether a substantial amount of legitimate speech will be chilled. See Young, 427 U.S. at 60. Judged in relation to the situations where Proposition 227 clearly does and does not apply, we do not believe that the situations where Proposition 227's application is uncertain will cause a substantial chilling effect on legitimate speech. In other words, in the vast majority of circumstances, it should be clear when a teacher is providing instruction and presenting the curriculum to students. See Hill, 530 U.S. at 733; Young, 427 U.S. at 61 (no substantial chilling effect, in part, because scope of statute "will be readily answerable" in most situations).
 
 
 31
 Plaintiffs contend that the uncertainty about which activities are covered by Proposition 227 is compounded by the uncertainty about how much non-English is permitted during these activities. The initiative requires that teachers present the curriculum "overwhelmingly" in English or "nearly all" in English. Cal. Educ. Code &#167 306(b) and (d). Plaintiffs argue that these terms are too vague to give them sufficient notice of how much English they must speak to avoid liability.
 
 
 32
 The terms "overwhelmingly" and "nearly all," like "curriculum" and "instruction," are terms of common understanding. Although they are not readily translated into a mathematical percentage, the First Amendment does not require them to be. See Grayned, 408 U.S. at 110 ("[W]e can never expect mathematical certainty from our language."). To satisfy heightened vagueness scrutiny, it is sufficient that the vagueness of these terms does not result in the chilling of a substantial amount of legitimate expression. See Young, 427 U.S. at 60.
 
 
 33
 Here, it is unlikely that the ambiguity in the terms "overwhelmingly" and "nearly all" will chill any more than a negligible amount of non-English speech. Plaintiffs admit that, "[r]ealistically, educators do not have the option to speak to students exclusively in English" because they have an affirmative obligation to effectively impart knowledge to students and because some school districts require educators to use some non-English. This means that, despite any vagueness inherent in the terms "overwhelmingly" and "nearly all," it is highly unlikely that educators will restrict themselves to speaking English only. Instead, by Plaintiffs' own account, educators will continue to use some amount of non-English. In light of these circumstances, we have no reason to believe that any chilling effect caused by the above terms will be more than negligible. Cf. Bates v. State Bar of Arizona, 433 U.S. 350, 380-81 (1977) (commercial speech unlikely to be chilled because commercial entities have strong economic interest in engaging in such speech).
 
 
 34
 Moreover, even if some teachers, out of fear of liability, would limit their instructional speech to English only, it is unlikely that the amount of unspoken non-English would be substantial. The amount of speech chilled, i.e., the difference between "nearly all" English and "all" English, is necessarily small. The same is true with respect to the difference between speaking "overwhelmingly" in English and speaking only in English. For the above reasons, we do not believe that any vagueness contained in the terms "curriculum, " "instruction," "nearly all" and "overwhelmingly," whether considered separately or together, will chill a substantial amount of legitimate speech.
 
 
 35
 In addition, these terms seem no more vague than other statutory terms which have survived facial vagueness challenges under the First Amendment. For example, in Young, the plaintiffs challenged a zoning ordinance restricting the location of adult theaters. By its terms, the ordinance only applied to theaters presenting material "characterized by an emphasis" on specified sexual activities. 427 U.S. at 53. The plaintiffs in Young argued it was impossible to determine how much of the specified sexual activity could be included in a film before city officials would find it "characterized by an emphasis" on such activity. Id. at 59. A majority of the Supreme Court upheld the ordinance against the facial vagueness attack, in part, because it believed that, in most situations, it would be readily apparent whether a film fell within the scope of the ordinance. Id. at 61. In the context of Proposition 227, the terms "overwhelmingly," "nearly all," "curriculum" and "instruction," seem more concrete, specific and objective than the amorphous phrase, "characterized by an emphasis," which the Court found sufficiently clear in Young.
 
 
 36
 Similarly, in Grayned, the Supreme Court rejected a facial vagueness challenge to a city ordinance prohibiting any "diversion which disturbs or tends to disturb the peace or good order of such school session or class." 408 U.S. at 108. While acknowledging that the ordinance did not specify the prohibited quantum of disturbance, the Court found it sufficient that the statute was restricted to the school context and that the question of whether a diversion disturbed a school session easily could be determined by the impact on normal school activities. The Court concluded that "the ordinance gives fair notice to those to whom it is directed." Id. at 112 (quotation marks, alterations omitted). Proposition 227's requirement that public school teachers present the "curriculum" "overwhelmingly" in English gives at least as much notice as the ordinance in Grayned prohibiting any diversion which "disturbs or tends to disturb the peace or good order" of a school.
 
 
 37
 Numerous other statutes have withstood facial vagueness challenges even though they contained language arguably more ambiguous than that contained in Proposition 227. See, e.g., Hill, 530 U.S. at 732 (rejecting vagueness challenge to ordinance making it a crime to "approach" another person, without that person's "consent," to engage in "oral protest, education, or counseling" within specified distance of health care facility); Boos v. Barry, 485 U.S. 312 (1988) (rejecting vagueness challenge to ordinance interpreted as regulating conduct near foreign embassies "when the police reasonably believe that a threat to the security or peace of the embassy is present"); Cameron v. Johnson, 390 U.S. 611 (1968) (rejecting vagueness challenge to ordinance prohibiting protests that "unreasonably interfere" with access to public buildings); Kovacs v. Cooper, 336 U.S. 77 (1949) (rejecting vagueness challenge to sound ordinance forbidding "loud and raucous" sound amplification).
 
 
 38
 Furthermore, in analyzing whether a statute's vagueness impermissibly chills First Amendment expression, it is necessary to consider the context in which the statute operates. See Hoffman Estates, 455 U.S. at 498 ("The degree of vagueness that the Constitution tolerates . . . depends in part on the nature of the enactment."); Schwartzmiller v. Gardner, 752 F.2d 1341, 1347 (9th Cir. 1984) ("[J]udgment is necessary to determine the degree of vagueness that the Constitution tolerates in a particular situation.") (alterations, quotation marks omitted); see also Bethel Sch. Dist. v. Fraser , 478 U.S. 675, 686 (1986) (more vagueness tolerated in public school setting regarding student disciplinary rules); Stephenson v. Davenport Comm. Sch. Dist., 110 F.3d 1303, 1308-09 (8th Cir. 1997) (same).
 
 
 39
 Here, in the context of curriculum presentation, it is the state's pedagogical interests that take clear precedence over the teachers' First Amendment interests. This is true, even given our assumption that teachers' instructional speech receives First Amendment protection under the Hazelwood standard. To pass constitutional scrutiny under Hazelwood, a restriction on a teacher's instructional speech need only be "reasonably related to legitimate pedagogical concerns." 484 U.S. at 273. A teacher's First Amendment interests, therefore, must ordinarily give way to the state's pedagogical interests. Because any speech potentially chilled by Proposition 227 enjoys only minimal First Amendment protection, assuming it enjoys any protection at all, and because it is the state's pedagogical interests that are paramount in this context, any vagueness contained in Proposition 227 is even less likely to jeopardize First Amendment values.
 
 
 40
 Finally, any vagueness regarding Proposition 227 is mitigated by the section 320's scienter requirement."[T]he Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." Hoffman Estates, 455 U.S. at 499; see also Hill, 530 U.S. at 732 (potential vagueness ameliorated in part by scienter requirement). For liability to attach, an educator must not only "refuse to implement" the terms of Proposition 227, the educator must also refuse to do so "willfully and repeatedly." Cal. Educ. Code &#167 320. In the context of this facial challenge, we need not definitively interpret the phrase "willfully and repeatedly." It is sufficient to note that we seriously doubt such wrongful intent could be found if an educator in good faith attempts to comply with Proposition 227 or in good faith attempts to comply with the school district guidelines regarding the language of instruction. See People v. Hagen, 80 Cal. Rptr. 2d 24, 27-31 (Cal. 1998) (violation of California tax code not "willful" if defendant had good faith belief actions complied with law; must show "voluntary, intentional violation of a known legal duty"); People v. Marsh, 26 Cal. Rptr. 300, 307 (Cal. 1962) (conspiracy to violate public welfare statute requires showing that defendant "knew of the law and intended to violate it"); Crofoot v. Weger , 241 P.2d 1017, 1019 (Cal. Ct. App. 1952) (refusal to pay contractual installments not "willful" when defendant had good faith belief payments were not owed); see also Lusardi Constr. Co. v. Aubry, 4 Cal. Rptr. 2d 837, 849 (Cal. 1992) ("[C]courts refuse to impose civil penalties against a party who acted with a good faith and reasonable belief in the legality of his or her actions."); Kwan v. Mercedes-Benz of N. Am., Inc., 28 Cal. Rptr. 2d 371, 377 (Cal. Ct. App. 1994) (same). Such a reading of Proposition 227's scienter requirement is certainly within the allowable meaning of the statute. At the very least, the statute is readily susceptible to this construction.[9]
 
 
 41
 We take heed of the Supreme Court's admonition: "Facial invalidation is, manifestly, strong medicine that has been employed by the Court sparingly and only as a last resort." National Endowment for the Arts v. Finley, 524 U.S. 569, 580 (1998) (quotation marks omitted). Because any vagueness in Proposition 227 threatens to chill only a small amount of legitimate speech, because such speech receives minimal protection under the First Amendment, assuming it receives any protection at all, and because the initiative's high scienter requirement mitigates any potential vagueness, we do not believe that the chilling effect of Proposition 227 is sufficiently substantial to warrant the extraordinary remedy of facial invalidation.[10] Accordingly, we conclude that section 320 of Proposition 227 is not unconstitutionally vague on its face.[11]
 
 
 42
 The judgment of the district court is AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 The full text of section 320, entitled "Legal Standing and Parental Enforcement," reads as follows:
 As detailed in Article 2 (commencing with Section 305) and Article 3 (commencing with Section 310), all California school children have the right to be provided with an English language public education. If a California school child has been denied the option of an English language instructional curriculum in public school, the child's parent or legal guardian shall have legal standing to sue for enforcement of the provisions of this statute, and if successful shall be awarded normal and customary attorney's fees and actual damages, but not punitive or consequential damages. Any school board member or other elected official or public school teacher or administrator who willfully and repeatedly refuses to implement the terms of this statute by providing such an English language educational option at an available public school to a California school child may be held personally liable for fees and actual damages by the child's parents or legal guardian.
 
 
 [2]
 The First Amendment prohibits Congress from making any law "abridging the freedom of speech." The Fourteenth Amendment prohibits any state from depriving "any person of life, liberty, or property, without due process of law."
 
 
 [3]
 Although Plaintiffs seek to invalidate section 320 only, some of the statutory terms targeted in their vagueness challenge are not used in section 320, but instead appear elsewhere in the statute. For this reason, we discuss Plaintiffs' arguments with reference to Proposition 227 in general, while keeping in mind that Plaintiffs do not seek invalidation of the entire statute.
 
 
 [4]
 We are aware that California allows federal courts to certify questions of state law to the California Supreme Court. See Cal. R. Ct. 29.5. Mindful of the Supreme Court's admonition in Arizonans for Official English v. Arizona, 520 U.S. 43, 75-78 (1997), we issued an order in advance of oral argument asking the parties to be prepared to address the following questions: "(1) whether any potentially determinative issue in this case should be certified to the California Supreme Court...; and (2) if so, the precise formulation of said question(s)." At argument, all parties, including the California Attorney General representing the State Board of Education, agreed that this case presented no questions of state law that should be certified, and, in fact, urged this panel to decided the case without certifying any questions of law to the California Supreme Court.
 
 
 [5]
 We note that Defendants make no First Amendment argument based on the fact that Proposition 227 restricts a teacher's choice of language. That is, Defendants essentially concede that Proposition 227's restrictions on the use of non-English are restrictions on speech alone, not expressive conduct. Cf. Yniguez v. Arizonans for Official English, 69 F.3d 920, 936 (9th Cir. 1995) (en banc) (holding that decision to speak in language other than English implicates speech alone, not expressive conduct), vacated on other grounds sub nom Arizonans for Official English v. Arizona, 520 U.S. 43 (1997). As such, we will assume for purposes of this appeal that Proposition 227 regulates speech alone.
 
 
 [6]
 The circuit courts essentially have employed three different tests to analyze the free speech rights of teachers. The first is the Hazelwood test discussed above, which was developed in the context of a student's speech. Several cases have applied this test to a teacher's instructional speech. See, e.g., Vanderhurst v. Colorado Mountain Coll. Dist., 208 F.3d 908, 913-914 (10th Cir. 2000); Lacks v. Ferguson Reorganized Sch. Dist., 147 F.3d 718, 724 (8th Cir. 1998); Silano v. Sag Harbor Union Free Sch. Dist. Bd. of Educ., 42 F.3d 719, 723-24 (2nd Cir. 1994); Ward v. Hickey, 996 F.2d 448, 452 (1st Cir. 1993); Webster v. New Lennox Sch. Dist., 917 F.2d 1004, 1008 (7th Cir. 1990).
 The second test developed from Pickering v. Bd. of Educ., 391 U.S. 563 (1968) and Connick v. Myers, 461 U.S. 138 (1983) in the context of a public employee's speech. Under Pickering-Connick, a public employee's speech in effect receives no First Amendment protection unless it involves a matter of public concern. Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist., 149 F.3d 971, 978 (9th Cir. 1998). If the speech involves a matter of public concern, then courts must determine whether the employee's interest in expression outweighs the government's interest in workplace efficiency and avoiding workplace disruption. Id. Several cases have applied this test to a teacher's instructional speech. See, e.g., Boring v. Buncombe County Bd. of Educ., 136 F.3d 364, 368-69 (4th Cir. 1998) (en banc); Kirkland v. Northside Indep. Sch. Dist., 890 F.2d 794, 800 (5th Cir. 1989); Nicholson v. Bd. of Educ., Torrance Unified Sch. Dist., 682 F.2d 858, 864-65 (9th Cir. 1982).
 The third test developed from Rust v. Sullivan , 500 U.S. 173 (1991) and Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819 (1995) in the context of government speech. Under Rust-Rosenberger, when the government is the speaker, in the sense that the government is conveying a particular message through a person, that person receives no First Amendment protection. At least one case has applied this test to a teacher's instructional speech. See Edwards v. Cal. Univ. of Pa., 156 F.3d 488, 491-92 (3rd Cir. 1998).
 
 
 [7]
 For the same reason, Plaintiffs need not demonstrate that Proposition 227 is impermissibly vague in all of its applications to succeed on their challenge. "In a facial vagueness challenge, the ordinance need not be vague in all applications if it reaches a substantial amount of constitutionally protected conduct." Nunez, 114 F.3d at 940 (quotation marks omitted); see also Hoffman Estates, 455 U.S. at 494-95.
 
 
 [8]
 Plaintiffs do not suggest that foreign language classes (i.e., classes designed to teach students how to speak languages other than English) are subject to Proposition 227. They apparently assume, as do we, that the purpose of the statute, as well as common sense, dictate that such classes need not be taught in English.
 
 
 [9]
 Plaintiffs argue that the vagueness of Proposition 227 works a particular hardship on them because they do not have the luxury of speaking only English to ensure they avoid liability under section 320. Plaintiffs contend that, because educators must effectively impart knowledge to English learners and some school districts specifically require the use of a certain amount of non-English, educators have no safe harbor for protection against the vague reach of the initiative. Although we sympathize with Plaintiffs' concern, we do not believe it is sufficient to justify the facial invalidation of a statute which otherwise threatens to chill only a small amount of minimally-protected speech and whose potential vagueness is mitigated by a high scienter requirement.
 
 
 [10]
 In view of our decision, we decline to address Defendants' alternative grounds for affirming the district court's decision.
 
 
 [11]
 Nothing, of course, in this decision precludes an educator from bringing a vagueness challenge to section 320 in particular, or to Proposition 227 in general, on an as-applied basis.
 
 
 TASHIMA, Circuit Judge, dissenting:
 
 43
 The parental enforcement provision of Proposition 227 allows parents to sue California's public school teachers for money damages for their use of non-English[1] without providing the teachers with sufficient clarity as to how much English is required and in what circumstances and settings. As a result, educators fearing personal liability must either teach at their own risk or, as is more likely, acquiesce in the complete elimination of non-English in the performance of their duties. Because the provision here raises all three concerns underlying the First Amendment vagueness doctrine-a lack of fair notice, a threat of ad hoc and subjective enforcement, and a chilling effect on protected expression -I must respectfully dissent from the majority's holding that the parental enforcement provision is not void for vagueness.
 
 
 44
 "First Amendment rights, applied in light of the special characteristics of the school environment, are available to teachers and students. It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." Tinker v. Des Moines Indep. Sch. Dist., 393 U.S. 503, 506 (1969). In light of the special characteristics of the school environment, however, the government can more readily regulate teacher speech in school-sponsored expressive activities because of the state's interest in educating students. See Hazelwood Sch. Dist. v. Kuhlmeier, 484 U.S. 260, 267 and 272-73 (1988) (holding that the test for limiting student speech is whether the restrictions are "reasonably related to pedagogical concerns" but also approving of "reasonable restrictions on the speech of students, teachers, and other members of the school community"); Downs v. Los Angeles Unified Sch. Dist., 228 F.3d 1003, 1010 (9th Cir. 2000) (suggesting the "same principles" of Hazelwood would govern regulation of teacher speech). Thus, the First Amendment applies in the schoolhouse and the school yard. Presumably the majority agrees, concluding that "Proposition 227 clearly implicates free speech rights." See Maj. op. at 1149. We have repeatedly recognized in no uncertain terms that "[w]here the guarantees of the First Amendment are at stake the [Supreme ] Court applies its vagueness analysis strictly." Cohen v. San Bernardino Valley Coll., 92 F.3d 968, 972 (9th Cir. 1996) (quoting Bullfrog Films v. Wick, 847 F.2d 502, 512 (9th Cir. 1988)). Unfortunately, the majority fails to do so here.
 
 
 45
 As an initial matter, the majority construes the scope of Proposition 227's language restrictions, and hence the basis for the potential liability of educators, as limited "to the language of instruction, i.e., the language teachers use to present the curriculum to students in California public schools." Maj. op. at 1151. Assuming that it is sufficient simply to note that "instruction" and "curriculum" are "words of common understanding," the majority then asserts that such an interpretation would include the teaching of academic lessons, but not other forms of interaction between teachers and their students. Maj. op. at 1151-52. Yet these terms have been recognized as having a far broader meaning than the majority is willing to recognize by none other than the United States Supreme Court itself:
 
 
 46
 The question whether the First Amendment requires a school to tolerate particular student speech-the question we addressed in Tinker-is different from the question whether the First Amendment requires a school affirmatively to promote particular student speech. The former question addresses educators' ability to silence a student's personal expression that happens to occur on the school premises. The latter question concerns educators' authority over school-sponsored publications, theatrical productions, and other expressive activities that students, parents, and members of the public might reasonably perceive to bear the imprimatur of the school. These activities may fairly be characterized as part of the school curriculum, whether or not they occur in a traditional classroom setting, so long as they are supervised by faculty members and designed to impart particular knowledge or skills to student participants and audiences.
 
 
 47
 Hazelwood, 484 U.S. at 270-71 (emphasis added).
 
 
 48
 Thus, while the term "curriculum" has been construed broadly for purposes of defining the authority of the state to regulate school-sponsored expression that could reasonably bear the imprimatur of the school, when it comes to saving this ambiguously worded restriction on the use of non-English by teachers the majority asserts that the provision is readily susceptible to a narrowing construction that is contrary to the Supreme Court's own understanding. Nor, as the majority concedes, can this court authoritatively construe the enforcement provision and give it a narrowing construction, which is a matter of state law.[2] It is no wonder, then, that plaintiff teachers are concerned about the use of non-English in such circumstances as student tutoring, field trips, supervision, and discipline.[3]
 
 
 49
 Even assuming that the scope of Proposition 227 is readily susceptible to some narrowing construction that would make it sufficiently clear to survive strict vagueness scrutiny as to when the use of non-English is restricted, I cannot agree that terms such as "overwhelmingly" and "nearly all" provide teachers with ample certainty as to how much non-English could expose them to personal liability. The majority states that although terms such as these "are not readily translated into a mathematical percentage, the First Amendment does not require them to be." Maj. op. at 1152. I agree. We should not ignore, however, as the majority does, the fact that individual school districts have interpreted these terms as requiring anywhere between 60 and 90 percent English.[4] While mathematical certainty may not be required, some modicum of objective clarity is constitutionally necessary. It is well settled that "[a] statute must be sufficiently clear so as to allow persons of `ordinary intelligence a reasonable opportunity to know what is prohibited.' " Foti v. City of Menlo Park, 146 F.3d 629, 638 (9th Cir. 1998) (quoting Grayned v. City of Rockford, 408 U.S. 104, 108 (1972)). Holding that the terms "nearly all" and "overwhelmingly" are sufficiently clear, in light of the disparity of interpretation adopted by public school districts throughout California, necessarily impugns the "ordinary intelligence" of our school officials in a manner that I find unwarranted.
 
 
 50
 The majority then contends that because teachers have an affirmative obligation to impart knowledge to their students and because they may even be required to use non-English in certain situations by their employing school districts, "it is highly unlikely that educators will restrict themselves to speaking English only." Maj. op. at 1152. The majority is apparently oblivious to the dilemma in which this places teachers of either fulfilling their legal and professional duties and exposing themselves to liability, or ignoring their teaching obligations in order to steer clear of a vague restriction on the amount of non-English that is permitted. Cf. Baggett v. Bullitt, 377 U.S. 360, 374 (1964) ("The State may not require one to choose between subscribing to an unduly vague and broad oath, thereby incurring the likelihood of prosecution, and conscientiously refusing to take the oath with the consequent loss of employment, and perhaps profession, particularly where the free dissemination of ideas may be the loser." (Internal quotation marks and citation omitted)). Under such circumstances, the use of non-English would only reflect a state-imposed professional duty that compels teachers to put themselves in jeopardy of liability to parents.
 
 
 51
 Moreover, contrary to the assertion of the majority, the amount of non-English foregone by teachers fearing liability is not negligible. Assuming the terms "nearly all " and "overwhelmingly" could be interpreted, as the facts show they have been, to require anywhere between 60 and 90 percent English, then the amount of chilled non-English could very well represent between 10 and 40 percent of expression by teachers. Surely, by any measure, this amount of deterred expression constitutes a sufficiently real and substantial chilling effect of a substantial amount of legitimate speech for the purpose of strict vagueness scrutiny.
 
 
 52
 The majority suggests that any vagueness is ameliorated by the inclusion of a scienter requirement. However,"[a] scienter requirement cannot eliminate vagueness . . . if it is satisfied by an `intent' to do something that is in itself ambiguous." Nova Records, Inc. v. Sendak, 706 F.2d 782, 789 (7th Cir. 1983). What does it mean "wilfully and repeatedly " to refuse to implement the terms of Proposition 227 by not providing "an English language educational option," when the amount of permissible non-English is not authoritatively defined and is in fact so imprecise that individual school districts have such widely varying interpretations? The majority believes "[i]t is sufficient to note that we seriously doubt such wrongful intent could be found if an educator in good faith attempts to comply with Proposition 227 or in good faith attempts to comply with the school district guidelines regarding the language of instruction." Maj. op. at 1154. But school district guidelines are of no help when the officials promulgating those guidelines are accountable to parents for the implementation of "an English language educational option " -the enforcement provision at issue specifically targets school board members, elected officials, and administrators, as well as teachers. Will a teacher be held liable when she "wilfully and repeatedly" teaches under a 60 percent guideline imposed by the school board, even though warned by the parents of a student that they consider that inadequate? Does adherence to such a guideline constitute "good faith" even when the officials of the school district may be sued as well? Must she disobey to show "good faith," despite her obligation to teach in conformity with official school district policies and guidelines?[5]
 
 
 53
 The mitigating effect of the scienter requirement is diluted not only by the futilty of attempting to determine what it means to intend to do something as vague as "refuse[ ] to implement the terms of this statute by providing an English language educational option," but also by the fact that it is the parents, not any governmental authority, who wield the prosecutor's enforcement discretion.[6] Section 320 presents a real risk of subjective and ad hoc enforcement precisely because it is left to the discretion of individual parents and their own disparate notions of what constitutes "an English language educational option." Regardless of what the school district requires, the parents of any individual student may hold the threat of personal liability over any teacher who they contend refuses to implement the vague terms of Proposition 227. The threat of such ad hoc enforcement is alone sufficient to chill the use of non-English, despite any residual comfort that, at the end of the day, a teacher may not be held liable. Because it is unclear when (in what settings) the language restrictions apply and how much English is required, Proposition 227's parental enforcement authority is "so imprecise that discriminatory enforcement is a real possibility." United States v. Wunsch, 84 F.3d 1110, 1119 (9th Cir. 1996).
 
 
 54
 Despite the majority's hyperbole, plaintiff teachers need not establish that the terms of Proposition 227 are "unfathomable," "boundless," or "incomprehensible." Notably, not even appellees have argued that the terms "nearly all " and "overwhelmingly" would survive the strict vagueness scrutiny that the First Amendment commands.[7] Yet the majority so concludes. Teachers do not have fair notice of when and how much English is required to avoid personal liability; delegation of enforcement to the whims of individual parents invites ad hoc and subjective enforcement; and the vague terms of the provision result in a real and substantial chilling effect on expression within the ambit of First Amendment protection. The parental enforcement provision of Proposition 227 allows for what can best be described as a means of "legalistic ambush." Cohen, 92 F.3d at 972. "If teachers must fear retaliation for every utterance, they will fear teaching. " Ward v. Hickey, 996 F.2d 448, 453 (1st Cir. 1993).
 
 
 55
 For the foregoing reasons, I dissent.
 
 
 
 Notes:
 
 
 [1]
 I use the term "non-English " as a shorthand expression to mean any and all languages, e.g., Spanish and Vietnamese, other than the English language.
 
 
 [2]
 The majority contends that its construction is supported by an intermediate state appellate court decision, McLaughlin v. State Bd. of Educ., 89 Cal. Rptr.2d 295 (Cal. Ct. App. 1999). See Maj. op. at 1147. That decision, however, did not even concern the scope of Proposition 227's language requirement; it thus lacks any analysis of the scope of Proposition 227. Further, its passing references to "instruction" provide no indication of whether the term is limited to academic lessons, or also includes other classroom activities and non-classroom curricular activity. Finally, in the passage that the majority removes from the context of the decision, the state court also refers to "English-only" instruction-yet it is the very ambiguity of how much English is required by terms such as "overwhelmingly" and "nearly all" that is at issue here. No party contends that Proposition 227 requires only English. It is thus doubtful whether the cited passage supports much of anything for our purposes here.
 
 
 [3]
 The broad scope of circumstances under which a teacher might be sued for using non-English is further underscored by the vague and encompassing variety of alternative phrases employed within the text of the enforcement provision itself: "English language public education," "English language instructional curriculum," and "English language educational option." See Cal. Educ. Code &#167 320. Even if, as the majority asserts, the use of these terms "is simply a shorthand to the core requirements of Proposition 227 embodied in sections 305 and 306," majority op. at 11834, those sections do not lend themselves to the construction adopted by the majority. Section 306(d), for example, in defining "sheltered English immersion," specifically distinguishes between "classroom instruction" and "curriculum and presentation." Moreover, despite the majority's effort to cabin the potential scope of teacher liability under &#167 320, it is interesting to note that appellees themselves disagreed below as to the scope of the provision's requirements. Defendant State Board of Education and its members insisted that the language restriction applied to "only classroom communication, and more specifically classroom instruction," whereas Intervenor Ron Unz, the sponsor of Proposition 227, contended that "[t]here is no reason (as the SBE suggests) to limit the applicability of Section 320 to the classroom." Confusion of this sort is a further indication that teachers will continue to remain uncertain of when such language restrictions apply.
 
 
 [4]
 See Louis Sahagun, Responses to Prop. 227 All Over the Map, Los Angeles Times, September 2, 1998, at B2, available at 1998 WL 18870286.
 
 
 [5]
 These concerns are not hypothetical. For example, the declarations of the plaintiff teachers indicate that some school districts require the use of a "preview/ review" method of teaching whereby a teacher "previews" a lesson by giving her students vocabulary words and concepts in Spanish, teaches the lesson in English, and "reviews" the students' comprehension of the lesson in Spanish. If a teacher believes that this method may be inadequate under Proposition 227 or is warned to such effect by a parent, what is she to do when her school district has interpreted it as permissible under the vague terms of the provision and requires that it be used? Does that mean she, or the school board officials for that matter, are attempting to comply in "good faith"?
 
 
 [6]
 The State Board of Education has the authority to promulgate regulations clarifying when and how much non-English is permissible for the benefit of all concerned--parents, as well as school officials and teachers. Under state law, it has the authority to "adopt rules and regulations not inconsistent with the laws of this state . . . for the government of . . . elementary schools . . . and . . . secondary schools . . . of the state." Cal. Educ. Code &#167 33031. In fact, the State Board of Education has promulgated regulations clarifying other aspects of Proposition 227, such as the terms "a good working knowledge of English" and "reasonable fluency in English" from &#167 &#167 305 and 306. See Cal. Code Regs. tit. 5, &#167 11301. It has not seen fit, however, to provide a uniform standard establishing when and how much English is required under Proposition 227 to avoid personal liability.
 
 
 [7]
 In fact, appellees readily concede that "[r]esolution of this issue will turn largely on the Court's choice of the proper standard of vagueness scrutiny to be applied to the statute." Appellees contend that ordinary due process scrutiny is all that is required because no protected First Amendment interests are at stake. The majority rejects that analytical premise, but nonetheless upholds the provision.